ROBERT G. OTT, Corporation Counsel Milwaukee County
You have asked for my opinion on the applicability of the open meetings law, sections 19.81-19.98, Stats., to the Milwaukee Economic Development Corporation and the Metropolitan Milwaukee Enterprise Corporation.
The Milwaukee Economic Development Corporation was originally incorporated in 1971, under the name Milwaukee Model Cities Development Corporation ("MMCDC"), as a chapter 181 nonstock, nonprofit corporation. Two of MMCDC's incorporators were private citizens and one was the assistant director of the City of Milwaukee, Department of City Development ("Department of City Development"). The purpose of the corporation, apparently, was to provide economic development loans to private citizens with funds the City of Milwaukee ("city") obtained under the Federal Model Cities Program.
In 1974, MMCDC changed its name to the Milwaukee Economic Development Corporation ("MEDC"). In 1975, the federal government phased-out the model cities program. Pursuant to a phase-out plan, the Milwaukee City Council authorized the mayor to execute a contract with MEDC permitting MEDC to retain the assets and interest it derived from model cities program funds provided that MEDC maintain *Page 130 
a management agreement with the city. See City of Milwaukee Resolution, file number 73-1948-j.
MEDC currently operates under restated articles of incorporation, filed with the Secretary of State on December 5, 1985, which state that the purpose of the corporation is to "further the economic development of the City of Milwaukee and to promote job creation in the metropolitan Milwaukee area." The 1989 annual report for MEDC, which was published by the Department of City Development, describes MEDC as a "City-sponsored corporation" which provides financing to businesses that promise to create job opportunities and new investment in Milwaukee. MEDC currently has a contract with the city to administer funds the city obtains under the federal Community Development Block Grant and Urban Development Action Grant programs. City of Milwaukee, Contract No. 88-26 (CM), dated August 23, 1988. Although MEDC has obtained some money from commercial sources, the vast majority of money MEDC uses to make loans is derived from public funds.
The bylaws for MEDC set the number of directors of the corporation at nine. The bylaws reserve four of the nine directors positions for specified city officials: 1) the mayor, 2) the comptroller, 3) the president of the common council and 4) a member of the common council, other than the president.
The bylaws for MEDC also provide that the corporation shall have six officers: 1) chairman of the board, 2) vice chairman of the board, 3) president, 4) vice president, 5) secretary and 6) treasurer. The bylaws state that the chairman and vice-chairman of the board cannot be directly affiliated with the city government. The bylaws also state that the president, vice president, secretary and treasurer may be selected by the city pursuant to a contract between the city and MEDC, and that the city shall determine the salary for MEDC officers selected by the city. MEDC's bylaws and articles of incorporation list the address for the Department of City Development as MEDC's principal office. *Page 131 
All of MEDC's offices are located in city-owned buildings. Pursuant to the contract MEDC currently has with the city, the Commissioner of the Department of City Development selected the current president, vice president, secretary and treasurer of the corporation. All of those officers are city employes. Some of MEDC's staff members are also city employes. The officers and staff are permitted to conduct MEDC business during the hours for which they are paid a city salary. The city provides MEDC with all of the office space, equipment and supplies needed by the corporation. Under the terms of the contract, MEDC is responsible for reimbursing the city for the salaries and benefits the city pays for the time city employes spend working for MEDC, and the cost of providing office space, equipment and supplies to MEDC. MEDC's obligation to reimburse the city is offset against grants MEDC receives from the city.
The Metropolitan Milwaukee Enterprise Corporation ("MMEC") is a chapter 181 nonstock, nonprofit corporation created in 1985. MMEC provides economic development loans with funds the city obtains under the federal Small Business Administration loan program. The articles of incorporation for MMEC, which were filed with the Secretary of State on November 1, 1985, set the number of directors of the corporation at fourteen. Neither MMEC's articles of incorporation nor its bylaws reserve any directors positions for city officials or employes. However, two of MMEC's current directors are city council members and one is a city employe.
In all other relevant respects, MMEC's relationship to the city is similar to that of MEDC. MMEC's articles of incorporation and bylaws list the Department of City Development as MMEC's principal office. All of MMEC's offices are located in city-owned buildings. MMEC's bylaws state that its president, vice president, secretary and treasurer may be selected by the city under a contract between the city and MMEC. Pursuant to that provision, a city official selected all of MMEC's current *Page 132 
officers. All of MMEC's officers and some of its staff members are city employes. The city provides all office space, equipment and supplies needed by MMEC. The cost the city incurs in supplying staff and other resources to MMEC is offset against grants MMEC receives from the city.
The open meetings law applies to MEDC and MMEC if they are "governmental bod[ies]" within the meaning of section 19.82(1), which provides:
 "Governmental body" means a state or local agency, board, commission, committee, council, department or public body corporate and politic created by constitution, statute, ordinance, rule or order; a governmental or quasi-governmental corporation except for the Bradley center sports and entertainment corporation created under ch. 232; any public purpose corporation, as defined in s. 181.79(1); a nonprofit corporation operating an ice rink which is owned by the state; or a formally constituted subunit of any of the foregoing, but excludes any such body or committee or subunit of such body which is formed for or meeting for the purpose of collective bargaining under subch. IV or V of ch. 111.
You ask three questions regarding the proper interpretation of the phrase "governmental or quasi-governmental corporation." Those questions can best be answered by directly addressing the question whether MEDC and MMEC are "quasi-governmental" corporations within the meaning of section 19.82(1).
The open meetings law does not define "governmental or quasi-governmental corporation." The drafting file for chapter 426, Laws of 1975, which created the current open meetings law, contains no information on the intended meaning of "governmental or quasi-governmental corporation." There is no Wisconsin case law interpreting that phrase.
In 66 Op. Att'y Gen. 113 (1977), my predecessor concluded that the Palmyra Volunteer Fire Department, which was organized as a chapter 181 nonstock, nonprofit corporation, was *Page 133 
not a "governmental or quasi-governmental corporation" within the meaning of section 19.82(1). The fire department received money from the Palmyra Fire Protection District for providing fire protection to the district. My predecessor stated that "[e]ven though a corporation may serve some public purpose, it is not a `governmental or quasi-governmental corporation' under sec. 19.82(1), Stats., unless it also is created directly by the Legislature or by some governmental body pursuant to specific statutory authorization or direction." 66 Op. Att'y Gen. at 115.See also Informal Opinion, dated February 26, 1987, and Informal Opinion, dated July 13, 1987 (concluding that chapter 181 nonstock, nonprofit corporations created by private citizens to promote economic development are not "quasi-governmental" corporations under section 19.82(1)).
My predecessor applied a different analysis in 73 Op. Att'y Gen. 54 (1984). That opinion addressed whether the Historic Sites Foundation, Inc. ("HSF") was a "quasi-governmental corporation" within the meaning of section 19.82(1). HSF was a chapter 181 nonstock, nonprofit corporation organized to manage the Circus World Museum. Members of the board of curators for the State Historical Society of Wisconsin served as directors of HSF.
After noting that HSF was created by private individuals, id.
at 56, the opinion went on to consider other factors to determine whether HSF was a "quasi-governmental corporation." The opinion cited the definition of "quasi" in Webster's New Collegiate Dictionary 700 (7th ed. 1977): "1) having some resemblance . . . by possession of certain attributes." The opinion then noted that HSF had no sovereign power, was not controlled by the Legislature and had no other governmental attributes. The opinion further noted that while members of the board of curators were also directors of HSF, they held their positions with HSF as private citizens, not as state officials. As a result, the opinion stated that HSF was not a *Page 134 
"quasi-governmental corporation" within the meaning of section19.82(1).
In 74 Op. Att'y Gen. 38 (1985), my predecessor concluded that chapter 181 nonstock, nonprofit corporations created by private individuals to provide financial support to public radio and television stations are not "quasi-governmental" corporations within the meaning of section 19.82(1). That opinion followed the same analysis as did the HSF opinion. The opinion, however, went on to state: "[T]he term `quasi-governmental corporation' is limited to nonstock body politic corporations created by the Legislature to perform essentially governmental functions." In support of that conclusion the opinion referred to McQuillin,Municipal Corporations § 2.13 (3rd ed. 1971), providing that "a quasi-municipal corporation is a public agency created orauthorized by the legislature to aid the state in, or take chargeof, some public or state work, other than community government,for the general welfare." 74 Op. Att'y Gen. at 43.
Thus, prior attorney general opinions have reached inconsistent conclusions with respect to whether the term "quasi-governmental corporation" in section 19.82(1) is limited to nonstock body politic corporations created directly by the Legislature or some other governmental body, or whether the term also includes corporations that were not created directly by a governmental body, but have some other attributes that resemble a governmental corporation. For the reasons set forth below, I am of the opinion that the term includes corporations that have other governmental attributes.
The Legislature has declared that the provisions of the open meetings law must be liberally construed to ensure that the public has the "fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." Sec. 19.81(1) and (4), Stats. The primary source in construing a statute is the statutory language itself. Non-technical words in a statute must be given their *Page 135 
ordinary and accepted meanings unless the statute specifies otherwise. In addition, a statute should be construed so as not to render any portion of it superfluous. State v. Sher, 149 Wis.2d 1,8-9, 437 N.W.2d 878 (1989).
Webster's Third New International Dictionary 1861 (1986) defines "quasi" as: "1: having some resemblance (as in function, effect, or status) to a given thing." Thus, the ordinary and accepted meaning of "quasi" suggests that the term "quasi-governmental corporation" is not limited to corporations created directly by a governmental body. Moreover, the definition of "governmental body" within section 19.82(1) includes: "a state or local agency, board, commission, committee, council, department or public body corporate and politic created byconstitution, statute, ordinance, rule or order." Interpreting the term "quasi-governmental corporation" as being limited to nonstock body politic corporations created directly by the Legislature or some other governmental body would render the term superfluous. For these reasons, I conclude that the term "quasi-governmental corporation" in section 19.82(1) is not limited to corporations created directly by a governmental body. The term also includes private corporations which, for other reasons, closely resemble a governmental corporation in function, effect or status. This conclusion is supported by the section of McQuillin, Municipal Corporations cited in 74 Op. Att'y Gen. 38 (1985), which has since been revised to explain that:
 The term "quasi-public [or quasi-governmental] corporation" is not per se public or governmental. On its face, the term connotes that it is not a public corporation but a private one. But "quasi" indicates that the private corporation has some resemblance to a public corporation in function, effect or status.
McQuillin, Municipal Corporations § 2.13 (3rd ed. rev. 1987 
Supp. 1990). *Page 136 
Whether a particular private corporation resembles a governmental corporation closely enough to be a "quasi-governmental corporation" within the meaning of section19.82(1) must be determined on a case by case basis, in light of all the relevant circumstances. The fact that MEDC and MMEC serve a public purpose by promoting economic development in the City of Milwaukee is not, in itself, sufficient to make the corporations "quasi-governmental." See 66 Op. Att'y Gen. 113, 115 (1977); Informal Opinion, dated February 26, 1987; and Informal Opinion, dated July 13, 1987. Nor is the fact that MEDC and MMEC receive most of their funding from public sources. Compare section 19.32
(1) (including certain nonprofit corporations that receive more than fifty percent of their funds from a county or municipality as an authority subject to the public records law) with section19.82(1) (omitting receipt of public funds from definition of"governmental body" subject to the open meetings law). However, in addition to these facts, four of MEDC's nine directors are city officials. They serve as directors by virtue of their positions as city officials, not as private citizens. The city selected the president, vice president, secretary and treasurer of MEDC and MMEC. All of those officers are city employes. The day-to-day operations of both corporations are, therefore, subject to the control of city employes. Further, the Department of City Development is the principal place of business for both MEDC and MMEC. Both corporations enjoy the privilege of being housed in city-owned buildings, using city equipment and supplies and having corporate officers and staff included on the city payroll and in the city employe benefit plan. In light of all these facts, I conclude that MEDC and MMEC resemble a governmental corporation in purpose, effect or status closely enough to constitute a "quasi-governmental corporation" within the meaning of section 19.82(1).
I reach this conclusion despite the fact that a majority of directors of both corporations are private citizens not directly *Page 137 
affiliated with the city and that the corporations are free to alter their relationship to the city by amending their articles of incorporation and bylaws. The open meetings law declares that the public is entitled to the "fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." Sec. 19.81(1), Stats. The city has obtained authority to appoint the president, vice president, secretary and treasurer of MEDC and MMEC. All of the officers the city appointed are city employes. Further, the city has agreed to house, staff and provide equipment and supplies to the corporations. In making all these arrangements, the city has transformed MEDC's and MMEC's business into governmental business, about which the public has a right to be informed. The fact the city has been able to find private corporations to acquiesce in such an arrangement cannot work to deprive the public of its right to knowledge about governmental affairs.
I am aware that adopting a fact-based test to determine whether a corporation is a "quasi-governmental corporation" within the meaning of section 19.82(1) creates some uncertainty as to the applicability of the open meetings law in particular cases. This result is necessitated by the Legislature's use of the term "quasi-governmental corporation." Moreover, the resultant uncertainty can be avoided without undue burden by resolving any question as to the applicability of the open meetings law in favor of complying with the law.
JED:MWS *Page 138